UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARVIN RAYSHAUN COATES,

          Plaintiff,

      v.                                      Case No. 20-C-1344

DAVIS ARNDT,

          Defendant.

## SCREENING ORDER

Plaintiff Marvin Coates, who is currently incarcerated at Racine County Jail and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated while he was serving a state sentence at Dodge Correctional Institution (DCI). Coates' original complaint was dismissed for failure to state a claim upon which relief can be granted. He was allowed to proceed *in forma pauperis*, however, and given leave to file an amended complaint. Dkt. No. 9. He has now filed an amended complaint, but it also fails to state a claim and so will likewise be dismissed, as will the action Coates has brought.

The law governing screening of pro se prisoner complaints was set forth in the court's earlier screening order and will not be repeated here. Coates alleges essentially the same facts concerning the sole remaining defendant that were set forth in his original complaint. He alleges he arrived at DCI on July 31, 2020, having tested negative for COVID-19 at Dane County Jail before his departure. He was placed in Unit 19 upon arrival, and then moved to Unit 21 on August 5 to continue his 14-day COVID-19 quarantine and isolation. On August 7, he was moved to Unit 17, allegedly on Captain Arndt's orders. While in Unit 17, Coates was informed that there were

several inmates showing symptoms of COVID-19, all of whom had access to showers, recreational facilities, and the phones. Coates was moved back to Unit 21 on August 10, and on August 11, he tested positive for COVID-19. There is no allegation that Coates' cellmate was infected, nor that Captain Arndt knew that any of the inmates on Unit 17 had COVID-19.

Even if true, these allegations fail to state a claim under § 1983. "To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Coates' claim seems to be that Captain Arndt willfully, maliciously, and in blatant disregard of his safety, caused Coates to contract COVID-19 by changing his cell assignment.

The mere fact that Coates contracted COVID-19 after he was moved to another unit, however, is not enough to state an Eighth Amendment claim:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The plain fact is that the country is experiencing a pandemic and cases of COVID-19 are breaking out in prisons and communities across the country. This does not mean that the correctional officers in charge of those prisons are subjecting inmates to cruel and unusual punishment. People, both inside and outside prisons and jails, are contracting COVID-19, a disease that, fortunately, for the vast majority of relatively young and reasonably healthy people is not serious.

Coates seems to blame Captain Arndt because he moved him out of the quarantine area too quickly, allegedly in violation of a policy implemented by the Governor and the Secretary of the Wisconsin Department of Corrections. The violation of a state or local policy, however, is not enough to make out a constitutional claim. *See Lewis v. Richards*, 107 F.3d 549, 553 n.5 (7th Cir. 1997); *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996). Moreover, as the court explained in its order dismissing Coates' original complaint,

> keeping new arrivals in quarantine for a period of time is intended to protect the larger institutional population from new arrivals who may be unknowingly carrying the disease. It does not protect the new arrivals from the general population which, in theory, has not been exposed to the potential carriers on the outside of the institution. Of course, the use of procedures such as quarantining and testing does not ensure that no infections will occur. But it is difficult to see how breaking Plaintiff's quarantine early would place him at greater risk.

Dkt. No. 9 at 4.

Coates' conclusory allegations that Captain Arndt acted "willfully, malicious[ly] and [in] blatant disregard," Dkt. No. 11 at 6, add nothing to his claim. *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It is also noteworthy that Coates does not allege he experienced any symptoms as a result of contracting COVID-19. Although he alleges he was sick for over two weeks, he does not allege what specific symptoms he had. This is significant since, as noted above, the vast majority of people who contract COVID-19 have at most only moderate symptoms and recover fully. In short, the mere fact that an inmate contracted COVID-19 while in prison does not give rise to a § 1983 claim against the correctional officers in charge of cell assignments.

Coates has provided no arguable basis for relief, having been given an opportunity to amend his complaint and again failed to make any rational argument in law or fact to support his

3

claims. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992) (quoting *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988), *aff'd sub nom. Neitzke v. Williams*, 490 U.S. 319 (1989)).

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for **failure to state a claim**.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined and emailed to DLSFedOrdersEastCL@doj.state.wi.us.

Dated at Green Bay, Wisconsin this   18th   day of November, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.